# EXHIBIT A

**AGREEMENT REGARDING THE DISCLOSURE OF INFORMATION**

This Agreement Regarding the Disclosure of Information (the "Agreement") memorializes the understanding between and among the University of Pittsburgh Medical Center ("UPMC"), and the United States of America (the "Government"), relating to disclosures and/or productions made by UPMC to the Government of certain information in the possession of UPMC, which it contends contain trade secrets, proprietary financial or commercial material, or other sensitive information, including but not limited to information protected under the Pennsylvania Peer Review Protection Act, 63 P.S § 425.1 et. seq., or the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub. L. 104-191 (the "Protected Information"), but which the Government sought and continues to seek in connection with the Government's pending investigation of UPMC (the "Government Investigation").

Therefore, UPMC and the Government agree as follows:

1.      UPMC has been compelled pursuant to the service of Civil Investigative Demand 2020-02-WDPA (the "CID") to disclose information and documents to the Government.

2.      UPMC may designate documents, data, or information that it reasonably believes to be or contain Protected Information in accordance with this Agreement.

3.      To designate documents, data, or information as Protected Information, UPMC shall identify the Protected Information with specificity by stamping or branding each page or image of all written Protected Information with the notation "CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY AGREEMENT" or, as applicable, "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY/PEER REVIEW PROTECTED" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY/MENTAL HEALTH TREATMENT RECORD or similar designation which identifies the nature of the confidential information, if appropriate, and the level of confidential treatment. For files produced in native format, UPMC shall include the word "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" in the file name and/or stamp or brand the slip sheet TIF image corresponding to the native file with the applicable notation.

4.      By disclosing the Protected Information to the Government pursuant to this Agreement, UPMC does not intend to waive any applicable common law or statutory privilege or protection, including, but not limited to, the attorney-client privilege, the self-evaluative privilege, Pennsylvania's Peer Review Protection Act, 63 P.S. § 425.1 et. seq., the therapist-patient privilege, and the protection afforded under the attorney work-product doctrine. The Government does not, by entering into this Agreement, make any representations as to the existence of any such privilege or protection or whether any privilege or protection applies to the Protected Information. The Government reserves the right to contest the assertion of any privilege, but will not argue that UPMC, by virtue of the disclosures made pursuant to this Agreement, has waived any applicable privilege. In the event the Government contests the assertion of any privilege or protection, the burden of showing that there is good cause for the designation and treatment under this Agreement shall remain with UPMC.  UPMC shall not contend that the Government's introduction of any Protected Information disclosed pursuant to this Agreement in any future proceeding in which the Government or its  representatives acting in an official government capacity are a party is barred from introduction by the attorney-client, work product or other applicable privilege solely by virtue

1

of this Agreement.

5.      To the extent the Government uses Protected Information in any pleading or other court filing, the Protected Information shall be filed under seal unless and until the Court orders otherwise.

6.      Except as provided above, and subject to any other legal objection, the Protected Information disclosed pursuant to this Agreement may be used by the Government (which includes their agents, retained consultants or experts) in the Government Investigation and in any criminal, civil, or administrative proceedings in which the Government or its representatives acting in an official government capacity are a party. In connection with the Government Investigation, except for information designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" as described in Paragraph 7 below, the Government may disclose Protected Information to witnesses, i.e., those not employed by the United States, if such person first is advised of the terms of this Agreement and executes a written acknowledgment that such person has read the Agreement and agrees to be bound by it.

7.      Notwithstanding the foregoing Paragraph 6, information designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," may only be used or viewed by the Government (as defined in Paragraph 6 above) in the Government Investigation and in any criminal, civil, or administrative proceeding in which the Government or its representatives acting in an official government capacity are a party.

8.      The Government reserves the right to disseminate to any other governmental entity of the United States or any state any Protected Information disclosed under this Agreement. Further, this Agreement does not in any fashion limit or proscribe the Government's ability to pursue any investigative leads or make derivative use of the Protected Information provided by UPMC, and such investigative leads or derivative information may be used against UPMC in any future proceeding in which the Government is a party.

9.      This Agreement shall not prevent or limit the ability of the Government to provide any Protected Information to the United States Congress pursuant to a Congressional request. The Government will use reasonable efforts to notify UPMC of such request if, and only if, the requesting Congressional party does not object to such notification.

10.     Except as otherwise permitted by the terms of this Agreement, the Government otherwise will not disseminate the Protected Information unless pursuant to court order, law, or regulation. The Government will make reasonable efforts to timely notify UPMC of any request by any third party (excluding the individuals and state and federal entities described in paragraphs 6, 8, and 9) seeking disclosure of any of the Protected Information so as to afford UPMC an opportunity to object thereto.

11.     **Clawback Agreement.** The Parties hereby stipulate to, pursuant to Federal Rules of Evidence 502(e), as follows:

        a.  The inadvertent production of any document in this action shall be without prejudice to any claim that such material is protected by any legally

2

cognizable privilege or evidentiary protection including, but not limited to the attorney/client privilege, or the work-product doctrine ("Protected Documents"), and UPMC shall not be held to have waived any rights by such inadvertent production.

b.  If any document produced by UPMC is subject to a legally recognizable privilege or evidentiary protection, the Government shall: (a) refrain from reading the document any more closely than is necessary to ascertain that it appears to be privileged; (b) immediately notify UPMC in writing that it has discovered documents believed to be privileged or protected; (c) specifically identify the documents, including by Bates number range or hash value range, and, (d) where possible, return, sequester, or destroy all copies of such documents, along with any notes, abstracts or compilations of the content thereof, within ten (10) days of discovery by the Government.  Regardless of whether such documents can be destroyed or separated, they shall not be reviewed, disclosed, or otherwise used by the Government.  Notwithstanding this provision, the Government is under no obligation to search or review UPMC's documents to identify potentially Protected Documents.

c.  Upon written notice of a production of Protected Document(s) by UPMC, or oral notice if notice is delivered on the record at a deposition, the Government must promptly return, sequester or destroy the specified document and any electronic or hard copies the Government has and may not use or disclose the information until the claim that it is a Protected Document has been resolved.  UPMC shall provide an updated privilege log for such documents setting forth the author, recipient(s), and subject matter of the document, along with the basis for the claim of privilege or evidentiary protection, as well as any portion of the document that does not contain privileged or protected information.  UPMC is not required to include in any privilege log communications between UPMC and its attorneys that occurred after UPMC first learned the Government was conducting an investigation.

d.  To the extent that the information contained in a document subject to a claim that it contains privileged or protected information has already been used in or described in other documents generated or maintained by the Government, then the Government will sequester such documents until the claim has been resolved.  If the Government has disclosed the specified documents before being notified of their inadvertent production, it must take reasonable steps to retrieve them.  UPMC shall preserve the specified documents until the claim is resolved.

e.  The Government shall have ten (10) days from receipt of notification of the inadvertent production to determine in good faith whether to contest

3

such claim and to notify UPMC in writing of an objection to the claim of privilege and the grounds for that objection.

f.   The Government's return, sequestering or destruction of such potentially Protected Documents as provided in this Agreement will not act as a waiver of its right to move for the production of the returned, sequestered or destroyed documents on the grounds that the documents are not in fact subject to a viable claim of privilege or protection.

g.   This Agreement is being entered into to facilitate and speed the production of what the Parties anticipate will be a large volume of documents.  To that end, the Government agrees to waive any argument that the production of documents pursuant to the CID constitutes a waiver of an applicable privilege or evidentiary protection, that the disclosure of the documents was not inadvertent, that UPMC did not take reasonable steps to prevent the disclosure of the privileged documents, or that UPMC failed to take reasonable or timely steps to rectify the error, as set forth in Federal Rule of Civil Procedure 26(b)(5)(B) and Federal Rule of Evidence 502(b).

h.   In the event that the Parties cannot reach agreement as to whether a specified document(s) is a Protected Document, either Party may submit the disputed document(s) to the Court under seal for a determination of the claim and will provide the Court with the grounds for the asserted privilege or protection.  Until the Court rules as to whether any disputed document is a Protected Document, the Government may not use it for any purpose.

i.   Upon a determination by the Court that the specified disputed documents are Protected Documents, and if the specified documents have been sequestered rather than returned or destroyed, the specified documents shall be returned or destroyed.  The Court may also order the identification and/or review of documents that have been identified as being potentially subject to a legally recognized claim by search terms or other means.  If the Court determines that the specified disputed documents are not Protected Documents, then the Government will be relieved of the obligation to sequester them and may review or use them in an appropriate manner and subject to the terms of this Agreement.  If they have returned the specified documents and are no longer in possession of them, UPMC will promptly produce them again.

12.   UPMC will use reasonable best efforts to provide the Government with copies of the Protected Information in a timely manner.

13.   This Agreement embodies the full and complete understanding of the parties hereto concerning the disclosure by UPMC to the Government of the Protected Information.  Any

modification or amendment of this Agreement shall be deemed null and void unless made in a single writing signed by the Government and UPMC, or authorized representatives thereof or unless ordered by a court.

14.    This Agreement may be executed in counterparts and/or facsimile form with the same effect as if the parties hereto had executed a single original Agreement. Facsimile signatures shall have the same effect as original signatures in binding the parties hereto to this Agreement.


UNITED STATES OF AMERICA

*/s/ Adam Fischer*
_____
Adam B. Fischer
Assistant United States Attorney
United States Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
(412) 894-7343
Dated: _____June 17_____, 2020


ZUCKERMAN SPAEDER LLP

_____
Morris Weinberg, Jr.
Sara Alpert Lawson
101 East Kennedy Blvd, Suite 1200
Tampa, FL 33602
(813) 321-8204
Attorneys for University of Pittsburgh
Medical Center

CLARK HILL PLC

Robert J. Ridge
Allen M. Lopus
One Oxford Centre
301 Grant Street, 14th Floor
Pittsburgh, PA 15219
(412) 394-7711

Dated: ____June 17____, 2020