**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,
*ex rel.*, JONATHAN D'CUNHA, M.D.

          *Plaintiff*, and

v.

DR. JAMES D. LUKETICH, UNIVERSITY
OF PITTSBURGH MEDICAL CENTER,
and UNIVERSITY OF PITTSBURGH,

          *Defendants*.

Civil Action No. 19-cv-495

District Judge Cathy Bissoon

**MOTION OF THE AMERICAN HOSPITAL ASSOCIATION AND THE**
**HOSPITAL AND HEALTHSYSTEM ASSOCIATION OF PENNSYLVANIA TO**
**FILE BRIEF AS *AMICI CURIAE***
**IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

NOW COMES American Hospital Association ("AHA") and the Hospital and Healthsystem Association of Pennsylvania ("HAP"), and hereby respectfully move this Court for leave to file the attached brief as *amici curiae* in support of Defendant's Motion to Dismiss. In support thereof, proposed *amici* state as follows:

1.      The American Hospital Association represents nearly 5,000 hospitals, healthcare systems, and other healthcare organizations. AHA members are committed to improving the health of the communities they serve and to helping ensure that care is available to and affordable for all Americans. The AHA educates its members on healthcare issues and advocates on their behalf so that their perspectives are considered in formulating health policy. One way in which the AHA promotes the interests of its members is by participating as *amicus curiae* in cases with important and far-ranging consequences for their members, including cases arising under the False Claims Act (FCA). *E.g.*, *Universal Health Servs., Inc. v. United States*

*ex rel. Escobar*, 136 S. Ct. 1989 (2016); *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401 (2011); *Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007).

2.      The Hospital and Healthsystem Association of Pennsylvania is the leading voice for the health and well-being of Pennsylvanians.  It advocates for nearly 240 Pennsylvania acute and specialty care, primary care, subacute care, long-term care, home health, and hospice providers, as well as the patients and communities they serve.

3.      Defendants' Motion to Dismiss presents important legal questions under the False Claims Act for hospitals and healthcare systems in Pennsylvania and throughout the United States.  In particular, the government and relator have wrongly alleged violations of the FCA in connection with agency billing guidance that leaves considerable discretion to individual hospitals and their surgical teams.  By seeking civil liability under the FCA for violations of such deferential guidance, the Department of Justice elevates its own untrained views about how surgeries should be conducted above the careful medical decisions made by surgical teams at the University of Pittsburgh Medical Center—and, more importantly, in the absence of expert agency rules that would properly give rise to a FCA lawsuit.   What is more, the government attempts to transform one hospital's internal policy—and one relator's highly-contested view of appropriate surgical practice—into law.  This is not a proper use of the False Claims Act. After all, the Supreme Court had held again and again that the Act "is not 'an all-purpose antifraud statute,' or a vehicle for punishing garden-variety breaches of contract or regulatory violations."   *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2003 (2016) (quoting *Allison Engine Co., Inc. v. U.S. ex rel. Sanders*, 553 U.S. 662, 672 (2008)).  But if this Complaint is allowed to succeed, hospitals everywhere will be at risk of even more costly, meritless FCA litigation, which already "has skyrocketed compared to …

other industries" in recent years.  Joan H. Krause, *"Promises to Keep": Health Care Providers and the Civil False Claims Act,* 23 Cardozo L. Rev. 1363, 1367 (2002).[1]  *Amici* do not seek to repeat Defendants' legal arguments, however.  Instead, proposed *amici* respectfully submit their brief to provide important information to the Court about the history, practice, and regulation of concurrent and overlapping surgeries during the alleged "Claims Period."  Compl. ¶ 3.  This background information will make clear to the Court just how meritless the Complaint's claims are and how alarming they should be to hospitals and healthcare system in this District and everywhere.

4.      Whether to permit *amicus* participation is "solely within the broad discretion of the district court."  *Waste Mgmt. of Pa. v. City of York*, 162 F.R.D. 34, 36 (M.D. Pa. 1995).  "A court may grant leave to appear as an amicus if the information offered is 'timely and useful.'"  *Id*. (quoting *Yip v. Pagano*, 606 F. Supp. 1566, 1568 (D.N.J. 1985), *aff'd mem.*, 782 F.2d 1033 (3d Cir. 1986)).  "The Third Circuit has said that 'permitting persons to appear in court . . . as friends of the court . . . may be advisable where third parties can contribute to a court's understanding.'"  *Avellino v. Herron*, 991 F. Supp. 730, 732 (E.D. Pa. 1998) (quoting *Harris v. Pernsley*, 820 F.2d 592, 603 (3d Cir.1987)).  In addition, the participation of *amici curiae* is particularly appropriate where, as here, *amici curiae* can "explain the impact a potential holding might have on an industry or other group."  *Neonatology Assoc., Inc. v. Comm'r of Internal*

---

[1] *See id*. ("The growing number of FCA suits has been accompanied by a marked expansion in the number and types of activities targeted by the law.  While the FCA initially was applied to straightforward fraudulent actions such as billing the government for health care services that were not rendered, more innovative theories of liability have recently emerged….  Although these newer theories of liability are rooted in the traditional FCA case law, they have stretched that law to encompass activities that are increasingly removed from their factual and legal precursors.  As a result, critics now argue that the Act's enormous penalties give health care providers virtually no choice but to settle cases that could not be proven in court, such as allegations based on good faith interpretations of ambiguous health care regulations.").

*Rev.*, 293 F.3d 128, 132 (3d Cir. 2002) (Alito, J.).

5.      This Court has previously exercised its discretion to permit the filing of *amicus curiae* briefs.  *E.g.*, *EEOC v. Scott Medical Health Center*, P.C., 217 F. Supp. 3d 834 (W.D. Pennsylvania 2016).  Other courts in this district have done so as well.  *E.g.*, Docket No. 28, *Geneva Coll. v. Sebelius*, No. 12-cv-00207-JFC (W.D. Pa.).

6.      *Amici's* proposed brief meets the above criteria, and so the Court should exercise its discretion and permit its filing.  The proposed brief does not seek to duplicate Defendants' arguments.  Instead, *amici* provide the Court with additional context about the history and regulation of overlapping surgeries since the *Boston Globe* published an article on the subject in October 2015, which the government specifically discusses in its Complaint.  *See* Dkt. 66, The United States of America's Complaint in Partial Intervention ¶ 128.  *Amici* respectfully submit that this information will help demonstrate the deleterious "impact" of enforcing the False Claims Act against the hospital "industry" in connection with overlapping surgeries. *Neonatology Assoc., Inc.*, 293 F.3d 128 at 132 (Alito, J.).

7.      Defendants consent to the filing of the proposed *amici curiae* brief.  The United States neither consents nor objects to the filing of the proposed *amici curiae* brief.  Relator does not take a position at this time on this request to file the proposed *amici curiae* brief.

8.      The *amici curiae* brief has been submitted with this motion along with a proposed order. If this motion is granted there will be no delay in the proceedings, particularly because, consistent with Federal Rule of Appellate Procedure 29(a)(6), *amici* have filed their proposed brief within seven days of when Defendants filed their Motion to Dismiss.  In fact, *amici* have filed their brief *on the same day* that Defendants filed their Motion to Dismiss, thus providing Plaintiffs with ample time to respond to the contextual information set forth in the *amicus* brief.

WHEREFORE, American Hospital Association and the Hospital and Healthsystem Association of Pennsylvania respectfully request that the Court grant leave to file the attached *amicus* brief in support of Defendant's motion to dismiss.


Dated:  November 1, 2021                              Respectfully submitted,

                                                     */s/* Chad Golder
                                                     Chad Golder (*Pro Hac Vice* Pending)
                                                     LAW OFFICE OF CHAD GOLDER
                                                     514 6th Street, NE
                                                     Washington, DC 20002
                                                     (203) 506-0670
                                                     golderlawoffice@gmail.com

                                                     Counsel for *Amici Curiae*