IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>*ex rel.*, JOHN DOE,<br><br>        Plaintiff,<br><br>v.<br><br>DR. JAMES D. LUKETICH,<br>UNIVERSITY OF PITTSBURGH<br>MEDICAL CENTER, AND<br>UNIVERSITY OF PITTSBURGH<br>PHYSICIANS,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 19-495<br><br>Judge Cathy Bissoon |

**MEMORANDUM AND ORDER**

**I.    MEMORANDUM**

On December 1, 2021, the Court directed Defendants to show cause as to why all the information in the Intervenor Complaint and the Omnibus Response in Opposition previously sealed or redacted should not be unsealed/unredacted under the Court of Appeals for the Third Circuit ("Third Circuit")'s ruling in In re Avandia Marketing Sales Practices & Products Liability Litig., 924 F.3d 662 (3d Cir. 2019), and whether the First Amendment right of public access attaches, and if so, whether the redactions survive under that standard. UPMC and UPP Defendants ("UPMC Defendants") responded as ordered on December 10, 2021. UPMC Defendants' Response to the Court's Order to Show Cause (hereinafter, "Response") (Doc. 103).[1] For the reasons below, the Court finds that UPMC Defendants have failed to show good

---

[1] The Court notes that while the Order to Show Cause was directed towards "Defendants," the only defendants who were required to respond were the UPMC and UPP Defendants, as the materials in question were most relevant to them. As such, the Court notes that Defendant Luketich need not have responded and indeed, did not respond.

cause as to why all the information previously redacted/under seal should remain redacted/under seal.

### A. Legal Standard

In order for information to be sealed in a civil case, where the information is a judicial record, the party seeking confidentiality must overcome the common law right of access, and if applicable, the First Amendment right of public access. Under the framework set in In re Avandia Marketing Sales Practices & Products Liability Litigation, "[o]nce a document becomes a judicial record, a presumption of access attaches." 924 F.3d at 672 (internal citations omitted). There is a presumptive right of public access to judicial records. Id. (internal quotations and citations omitted). The party seeking to seal information bears the burden of overcoming this presumption and show "that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." Id. (internal citations omitted). When finding that judicial records should be closed from the public, the Court must articulate "the compelling, countervailing interests to be protected," "make specific findings on the record concerning the effects of disclosure" and "provide an opportunity for interested third parties to be heard" in order to overcome the common law right of access. Id. at 672-73 (internal quotations and citations omitted). To make such a finding, "specificity is essential" and "[b]road allegations of harm, bereft of specific examples or articulated reasoning, are insufficient." Id.

### B. UPMC Defendants' Arguments

At present, UPMC Defendants concede that paragraphs 129, 135, 144 of the Intervenor Complaint (Doc. 66) should be unsealed/unredacted, along with the corresponding references in the Omnibus Response (Doc. 94). Response at 10-11. The Court agrees and orders that these

redactions be removed.

As to the remaining redactions, UPMC Defendants argue that paragraphs 139-142 must remain redacted and sealed because these allegations derive from peer review protected materials Response at 4-10.  Peer review is "the procedure for evaluation by professional health care providers of the quality and efficiency of services ordered or performed by other professional health care providers" and the confidentiality in that process is protected in Pennsylvania under the Peer Review Protection Act ("PRPA").  63 Pa. Stat. Ann. § 425.1 et. seq.  This statute protects the confidentiality of the proceedings and records of a review committee.  63 Pa. Stat. Ann. §425.4; Response at 4-5.  UPMC Defendants aver that this protection exists to encourage candor in the peer review process, which in turn helps maintain high professional standards in the medical field to provide safe and effective medical care to the general public.  Response at 5. The Pennsylvania Supreme Court recently held hospital committees that perform a "peer-review function" deserve PRPA confidentiality protections and reaffirmed the importance of the protections of the PRPA and the candor necessary to that process.  Leadbitter v. Keystone Anesthesia Consultants, Ltd., 256 A.3d 1164 (Pa. 2021).  In its decision, it also highlighted the purpose of the PRPA: "[t]he enactment stems from the dual observations that: the practice of medicine is highly complex and, as such, the medical profession is in the best position to police itself… and, the profession's self-regulation is accomplished, at least in part, through a peer-review mechanism undertaken to determine whether a particular physician should be given clinical privileges to perform a certain type of medical activity at a hospital."  Id. at 1164, 1168–69 (internal citations omitted).

UPMC Defendants explain the relevant peer review procedures and processes implicated in the information it seeks to protect, supporting these assertions through the Declaration of

3

Chatón T. Turner, Esq., Senior Associate Counsel and Vice President of Risk Management/Disabilities Services ("Declaration") (Doc. 103-1). One such process is the Professional Practice Evaluation Committee ("PPEC"), which evaluates care provided by practitioners to provide "constructive feedback, education and performance improvement assistance" with respect to its "quality, appropriateness, and safety." Response at 6-7; Declaration at ¶ 8. The Professional Practice Evaluation Policy ("Policy") guides the PPEC, and also contemplates other committees, including "specialist committees, division and section committees," among others. Declaration at ¶ 9. UPMC Defendants aver that "participants in a peer review process expect that the hospital where they have privileges and/or their employer will maintain the confidentiality of their participation in that process." Response at 7; Declaration at ¶ 11. The expectation of confidentiality encourages candid participation by the review committee. Id. UPMC Defendants aver that without an expectation of confidentiality, the review process would not work as designed, and thereby harm the quality of health care provided. Id. UPMC Defendants also aver that public disclosure would "threaten stakeholder confidence, including patients and their families, in UPMC-affiliated hospitals' peer review process, and damage UPMC and UPP's standing among current and prospective employees who rely on UPMC and UPP to protect the confidentiality of such processes." Response at 7; Declaration at ¶ 12.

UPMC Defendants also have provided arguments, redaction by redaction, as necessitated by Avandia. 924 F.3d 662 at 677, 680.

> i. *Paragraphs 139-140 of the Intervenor Complaint (excerpts from UPMC-CIDEm_00012790-12796)*

UPMC Defendants have provided UPMC-CIDEm_00012790-12796 to the Court for *in*

*camera* review.  Response at 8.  UPMC Defendants aver that this email thread addresses how to remediate "a potential patient safety concern," and that the participants in the email, including the redacted portions, were members of the Hospital Quality Patient Care, UPMC Quality Patient Care, and Patient Safety Committees during the relevant period.  Id.  UPMC Defendants have indicated that "[p]eer review takes many forms and is not limited to a time or place," and that due to busy physical schedules, peer review discussions may "be decentralized," and "occur by e-mail or telephone."  Declaration at ¶ 6.  UPMC Defendants argue that maintaining the confidentiality of this exchange is integral to the peer review process.  Response at 9.  Moreover, UPMC Defendants indicate that this information is best kept protected because "public disclosure would subject the peer review process to critique by non-medical professionals, compromising the ability of health care providers to best determine how to ameliorate any practice concern," and argue that the statements quoted by the Government in the Intervenor Complaint in Paragraphs 139-140 are "wholly unnecessary to the Government's attempt to state a claim for billing fraud" and "will not advance the public's ability to understand that claim."  Id.  Last, UPMC Defendants notes that the Government has the document and may use it to pursue its claims, and thus keeping the quoted portions of this document under seal is sufficiently tailored to protect UPMC's peer review process.  Id.

    ii.    <u>Paragraphs 141-142 of the Intervenor Complaint (excerpts from UPMC-CID-Em_00011313 and UPMC-CIDEm_00011337)</u>

UPMC Defendants have provided UPMC-CID-Em_00011313 and UPMC-CIDEm_00011337 to the Court for *in camera* review.  Response at 10.  In Paragraph 141, the Government quotes from a summary of a Risk Master incident report prepared by the PPEC, a review committee, and documented in draft and final recommendation letters prepared in

5

connection with its review of the incident, which are the two documents identified above. Response at 9-10. In Paragraph 142, the Government quotes from these draft and final letters. Response at 10. UPMC Defendants argue that these paragraphs contain the records of the PPEC's peer review protected proceedings, which are protected under the PRPA. Id. The UPMC Defendants argue that maintaining the confidentiality of this exchange is integral to the peer review process, and that the excerpts in question should be protected under the standards set forth in Avandia, for the same reasons given for the protection of Paragraphs 139-140. Id.

In sum, the UPMC Defendants have attempted to show that, for each of the four remaining subjects of redaction, there is another countervailing interest that overcomes the common law presumption of access to judicial records.[2] That countervailing public interest is the importance of protecting confidentiality in the peer review process, which is designed to encourage candor specifically to ensure quality patient care and physician practices, essential to the protection of the general public. Response at 7. UPMC Defendants also argue that public disclosure of peer review materials will harm them—that it will "threaten stakeholder confidence, including patients and their families, in UPMC-affiliated hospitals' peer review process, and damage UPMC and UPP's standing among current and prospective employees who rely on UPMC and UPP to protect the confidentiality of such processes" and "compris[e] their ability to monitor patient care and evaluate and manage physicians." Id.

---

[2] The UPMC Defendants have also made arguments regarding the First Amendment right of public access. Because the Court will find that the common law right is sufficient to permit access to judicial records in this case, it will not address the First Amendment right. See Avandia, 924 F.3d at 680 ("Although the constitutional issue is an interesting one, we again decline to define the parameters of the First Amendment right in a case where the common law right affords sufficient protection.").

### C. UPMC Defendants' Arguments Do Not Overcome the Presumption of Access

The Court finds that UPMC Defendants' arguments are not compelling. The main countervailing interest identified is protection of the peer review process. Yet, it is precisely when mechanisms within the medical field fail (as alleged here) that outside evaluation of the peer review process is needed. Moreover, the Court is not convinced that the peer review process writ large is harmed by the limited disclosure at issue here, where peer review is a part of the judicial record and the object of public scrutiny in a case such as this one. To the extent UPMC Defendants have reputational concerns due to the public airing of selected portions of their peer review process, mere harm to reputation broadly speaking is not enough to outweigh the strong presumption in favor of access to judicial records.

Based on the Court's research, the Court recognizes that the Third Circuit has not yet considered the issue of access to judicial records vis-à-vis information potentially protected by peer review privilege. Perhaps because of this, UPMC Defendants' arguments regarding the importance of the peer review process essentially revolve around the fact that under *Pennsylvania* law, peer review privilege is recognized under the PRPA. And insofar as the Court can follow, is using that as evidence to attempt to show that peer review materials are the type of information that courts should protect under seal. However, there are serious gaps in this reasoning. Not only is Pennsylvania law not applicable here, but privilege is also largely irrelevant. Issues of privilege relate to discovery and the production of documents, not the sealing of judicial records. As such, whether or not a privilege exists or applies is not the relevant inquiry.

To the extent UPMC Defendants are attempting to argue that privilege law may be applicable for analogy purposes, to illustrate the potential importance of confidentiality in this

context, that argument also fails.  In matters of discovery, federal privilege law is used for cases involving mixed federal and state law claims before a federal court, not state law.  Pearson v. Miller, 211 F.3d 57 (3d Cir. 2000).  There is no federal statute concerning peer review privilege, and courts in this Circuit do not recognize peer review privilege.  See Weiss ex rel. Est. of Weiss v. Cty. of Chester, 231 F.R.D. 202, 205 (E.D. Pa. 2005) (peer review privilege does not exist in federal common law); n.12 (rejecting argument that the Health Care Quality Improvement Act of 1986 creates a peer review privilege); Crawford v. Corizon Health, Inc., 2018 WL 1863022, at *1 (W.D. Pa. Apr. 18, 2018) (discussing Weiss: "the Court declined to extend the state statutory Peer Review privilege into federal common law, finding that the Third Circuit disfavors privilege, and that the U.S. Congress has considered, but declined to extend, a similar peer-review privilege to federal courts."); In re Grand Jury, 103 F.3d 1140, 1157 (3d Cir. 1997) ("In short, if a new privilege is deemed worthy of recognition, the wiser course in our opinion is to leave the adoption of such a privilege to Congress.").  To extrapolate more broadly—though UPMC Defendants have not raised this argument—the Court notes that the Third Circuit also has not recognized a self-critical analysis privilege.  See Alaska Elec. Pension Fund v. Pharmacia Corp., 554 F.3d 342 n.12 (3d Cir. 2009) ("The self-critical analysis privilege has never been recognized by this Circuit and we see no reason to recognize it now.").  Self-critical analysis privilege is the protection of an organization's own efforts to evaluate its performance for self-improvement purposes—of which peer review privilege could be considered a subset.

      Critically, the Court also fails to see how Pennsylvania's privilege law is directly relevant under the Avandia standard—if anything, privilege may come into play in terms of courts evaluating and adopting protective orders, but the Third Circuit has made clear in Avandia that when it comes to analyzing the sealing of judicial records, the standard for protective orders

is not the appropriate standard. 924 F.3d at 676 ("Unlike the Rule 26 standard, the common law right of access begins with a thumb on the scale in favor of openness—the strong presumption of public access"). As such, any reliance on the parties' confidentiality agreement also is beside the point. Response at 9.

Turning to UPMC Defendants' public policy arguments, UPMC Defendants focus on a possible chilling effect to the candor necessary to the peer review process as a countervailing interest necessitating the sealing of peer review documents. Response at 6-7. UPMC Defendants cite two cases in support of the proposition that peer review materials are the kind of information that is routinely protected by courts because confidentiality is important to the peer review process, but the cases cited are not binding on this Court and do not coexist with the Third Circuit's decision in Avandia. Id. at 6.

UPMC Defendants argue also that the exposure of the peer review process would shake stakeholder trust in the UPMC's peer review process. Id. at 7. However, in Avandia, the Third Circuit rejected purported harm to a company's competitive standing as a valid reason for sealing, when the harm was essentially mere embarrassment. 924 F.3d 662 at 679. Companies and individuals are sued in federal court every day. Many of those claims and the discovery underlying those claims necessarily tarnish the reputations of those entities. Such is the nature of litigation.

Simply put, UPMC Defendants' arguments fail to outweigh the public's right of access, beyond broad conclusory allegations of harm. See Avandia, 924 F.3d at 673 ("Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient.") (internal citations omitted). The disclosure of the four redactions does not destroy the confidentiality of their peer review process as a whole, because as UPMC Defendants point out, peer review is still well-

protected by state law for most actions that would otherwise expose peer review materials.

If that were not enough, the Court is skeptical that the information UPMC attempts to shield from the public is even of the kind protected by Pennsylvania law. Paragraphs 139-140 discuss individuals' ideas and perceptions regarding managing Dr. Luketich, rather than a candid evaluation of the care he is providing. Paragraph 141 relays factual information regarding a particular incident report regarding simultaneous surgeries where Dr. Luketich was not able to be located.[3] Paragraph 142 discusses a plan created in an attempt to monitor Dr. Luketich. These redactions are akin to wholly discoverable communications regarding the performance of an employee that could happen in any field, for any job—that Dr. Luketich is medical provider does not magically transform the nature of the content.

In sum, despite UPMC Defendants' arguments to the contrary, they have not offered a compelling interest for these redactions, and they have failed to overcome the presumption of public access to judicial records.

---

[3] To be clear, to the extent disclosure of any information would implicate privacy or HIPAA concerns of third parties or patients, the Court will take these considerations seriously. This does not implicate such concerns.

## II.    ORDER

Consistent with the foregoing, the Court finds that the UPMC Defendants have not shown good cause as to why its proposed redactions should remain under seal, namely Paragraphs 139-142 of the Intervenor Complaint. The Court also orders that the other redactions originally applied which UPMC Defendants concede should no longer be redacted, namely Paragraphs 129, 135, and 144, be removed.

The Government shall refile versions of previously redacted documents filed (namely, the redated versions of the Intervenor Complaint (Doc. 66) and the Omnibus Response (Doc. 94)) with redactions removed consistent with the Court's findings on or before March 14, 2022.

IT IS SO ORDERED.


March 7, 2022                                                    s\Cathy Bissoon
                                                                 Cathy Bissoon
                                                                 United States District Judge



cc:

All Counsel of Record