IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES *ex rel.* JONATHAN D'CUNHA, M.D., | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 19-495 |
| v. | ) ) | Judge Cathy Bissoon |
| JAMES D. LUKETICH, M.D., THE UNIVERSITY OF PITTSBURGH MEDICAL CENTER, AND UNIVERSITY OF PITTSBURGH PHYSICIANS, | ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

Defendants' Motion to Dismiss United States' Complaint in Partial Intervention (Doc. 81) will be denied.

The primary allegation in this False Claims Act ("FCA") case is that, since at least 2015, Defendants regularly submitted materially false claims for reimbursement to Medicare, Medicaid and other Government Health Benefit Programs related to services provided by Defendant, James D, Luketich, M.D. ("Dr. Luketich") – Defendant UPMC's longtime Department of Cardiothoracic Surgery Chair.  Specifically, the United States' Complaint in Partial Intervention alleges that Defendants UPMC and UPP knowingly have allowed Dr. Luketich to: book and perform multiple surgeries at the same time; travel back and forth between operating rooms during such surgeries or otherwise leave anesthetized patients to attend to other matters; attest falsely that he was with those patients during the key portions of the surgeries; and bill unlawfully the Government Health Benefit Programs for the procedures.  (Doc. 111).  The Government contends that these practices violate federal statutes and regulations that govern the

Government Health Benefit Programs at issue, and that apply to teaching hospitals and teaching physicians like UPMC and Dr. Luketich.

Defendants and their *amici*[1] argue that the Complaint in Partial Intervention[2] falls far short of stating a claim under Rule 12(b)(6) standards and/or stating an FCA claim for fraudulent billing with the particularity required by Rule 9(b). Defendants' attempts to nip these claims at the 12(b) stage is premature at best. To make out a *prima facie* case under the FCA, the United States must plead three elements: (1) that the defendant presented or caused to be presented a claim for payment to an agent of the United States; (2) that the claim was false or fraudulent; and (3) that the defendant knew that the claim was false. United States *ex rel.* Bookwalter v. UPMC *et al.*, 946 F.3d 162, 175 (3d Cir. 2018), cert. denied, 140 S. Ct. 2720 (U.S. 2020).

---

[1] On November 2, 2021, the Court granted the American Hospital Association and the Hospital and Healthsystem Association of Pennsylvania permission to file an *Amicus Curiae* brief in support of Defendants' Motion to Dismiss. (Docs. 86, 89). Curiously, the *amici* did not then file the brief on the docket as instructed in the Court's text order granting leave. (Doc. 89). Upon review, it appears as if the *amici* may have considered their brief to have been deemed filed as requested in their proposed order. (Doc. 86). Although not properly filed, both the United States and the Relator acknowledge the *amici*'s position in their briefs. I also have considered it, but find, that, even if properly filed, nothing in the *amicus* brief changes my conclusions herein. The *amici*'s arguments are primarily policy-based in favor of Defendants and hospitals in general. At the motion to dismiss stage, however, the Court must view the allegations in the light most favorable to the Plaintiff.

[2] Relator Jonathan D'Cunha, M.D., initially brought this action on behalf of the United States by filing a complaint under seal and serving it on the United States, but not Defendants, pursuant to FCA procedure. See 31 U.S.C. § 3730(b)(2); Doc. 96 (Relator Brief), at 2-3. The Relator, based on first-hand knowledge, asserted in his complaint that Dr. Luketich, with the knowledge of UPMC and UPP, engaged in the alleged fraudulent conduct at issue. Pursuant to the FCA, the United States investigated the Relator's allegations and, on July 26, 2021, notified the Court that it had elected to intervene in the Relator's concurrent-surgery and related allegations and that it intended to file a complaint in partial intervention addressing those issues. (Doc. 38). After the United States filed the instant Complaint in Intervention, the Relator voluntarily dismissed any claims in his complaint that differed from the intervened allegations. (Docs. 66, 76). The Relator remains a party to the case. See 31 U.S.C. § 3730(c)(2).

Here, the Government's 46-page, 188-paragraph Complaint alleges more than enough facts which, when taken as true, plausibly plead all three of these elements. First, by submitting claims to Medicare and other Government Health Benefit Programs, Defendants presented claims for payment to the Government. Second, the Complaint asserts that the claims were false. Among other things, the Government avers that, in violation of the conditions for payment, Dr. Luketich repeatedly: was not in the room for key portions of his surgeries; gamed the system by: performing three surgeries at the same time, or a second surgery when the key or critical parts of the first were not complete; and artificially extended some surgeries, thereby inflating costs. See, e.g., Complaint ¶¶ 103-110, 114-16, 118-124, 130, 138, 141, 144, 151-54. Third, the Compliant properly avers scienter. Id. ¶¶ 81, 85, 128-29, 132, 134-36, 147 (asserting Defendants' knowledge of falsity and providing examples). The pleading further describes the Government's alleged losses resulting from Dr. Luketich's conduct and related false billing practices and contends that the Government would not have paid the claims at issue if it had been aware of such practices. Id. ¶¶ 155-162.³

---

³ Courts addressing similar arguments have routinely held that the questions of falsity and scienter invite fact-specific inquiries best suited for resolution on summary judgment. See, e.g., United States ex rel. Wollman v. Gen. Hosp. Corp., 394 F. Supp. 3d 174, 188–89 (D. Mass. 2019) (denying motion to dismiss FCA Complaint alleging fraudulent billing for overlapping and concurrent surgeries in which a teaching physician performed two or three surgical procedures that required patients to be under anesthesia at the same time); id. at 190-91 (noting that "discovery [wa]s needed to determine whether Defendants' surgery scheduling, record-keeping, and informed consent practices were part of a good-faith effort to fully comply with a less than perfect regulatory regime or reflect a more sinister motive"); Landau v. Lucasti, 680 F. Supp. 2d 659, 671-72 & n.10 (D.N.J. 2010) (claims submitted to Medicare by a physician not physically present during the services satisfied the falsity prong; scienter was an issue of fact). See also United States ex rel. Druding v. Care Alternatives, 952 F.3d 89, 99-100 (3d Cir. 2020) (noting that, in the Third Circuit, "findings of falsity and scienter must be independent from one another for purposes of FCA liability," and clarifying that "limiting falsity to factual falsity is inconsistent with our case law, which reads FCA falsity more broadly as legal falsity, encompassing circumstances where a claim for reimbursement is non-compliant with requirements under the statute and regulations"), cert. denied, 141 S. Ct. 1371 (U.S. 2021); 31

Defendants' further argument that the Complaint fails to satisfy Rule 9(b)'s particularity standards is without merit. As the Court of Appeals for this Circuit explained in Bookwalter, while Rule 9(b)'s particularity requirement requires plaintiffs to allege the "who, what, when, where, and how of the events at issue," it "does not require [them] to plead any more, such as the date, time, place, or content of every single allegedly false Medicare claim." 946 F.3d at 176. Viewing the Government's Complaint as a whole, and considering the detailed allegations set forth therein and cited above, the Court finds that the pleading goes beyond Rule 8's plausibility standard and establishes a "strong inference" that false claims were submitted as required by Rule 9(b). See id. (quoting United States ex rel. Silver v. Omnicare, Inc., 903 F.3d 78, 92 (3d Cir. 2018)).

Defendants' additional argument that the recent Supreme Court decision in Azar v. Allina Health Servs., 139 S. Ct. 1804 (2019), precludes recovery in this case is misplaced. The Court in Allina held that an agency policy purporting to establish or change a substantive legal standard affecting Medicare benefits was invalid and unenforceable because it had not been subject to notice-and-comment rulemaking. See id. Citing Allina, Defendants argue that there can be no FCA liability here based on alleged violations of policies contained in agency guidance manuals, such as the CMS Manual, because those manuals did not go through notice-and-comment rulemaking. See Doc. 82 at 11-18. Even assuming the Allina reasoning extends at all to this case and/or the CMS Manuals, dismissal on this ground is not warranted because the Complaint does not rest on violations of sub-regulatory guidance, but asserts that Defendants falsely certified compliance with applicable regulations and/or statutes themselves. See, e.g., Complaint

---

U.S.C. § 3729(b)(1) (FCA definition of "knowingly" as acting with "actual knowledge," "deliberate ignorance," or "reckless disregard" of whether a claim or statement is false).

4

¶¶ 4, 34, 63-64, 69-76 (citing 42 C.F.R §§ 415.170 & 415.172 ("Teaching Physician Regulations") and 42 U.S.C. § 1395y ("Reasonable and Necessary Statute")).  Moreover, Allina addressed a sub-regulatory policy purporting to establish or change a substantive legal standard, not guidance that simply explains existing properly-promulgated standards.

Finally, because the FCA claims survive Defendants' Motion to Dismiss, the Government's common-law claims alleging Unjust Enrichment and Payment by Mistake also shall proceed.  See Doc. 82, at 24-25 (Defendants' Brief arguing that the common-law claims rise and fall with the underlying FCA claims).

In short, "[e]valuating a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Bookwalter, 946 F.3d at 177 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).  Judicial experience and common sense dictate here that the Government has stated plausible FCA claims against Defendants. At this early stage in the proceedings, the Complaint's allegations suffice.  In the words of the Court of Appeals in Bookwalter:

> With all this smoke, a fire is plausible.  So this case deserves to go to discovery.  Once the discovery is in, it may turn out that there is no fire. We do not prejudge the merits.

Id. at 178.

Rule 12(a)(4) now governs Defendant's answer deadline, but – should the parties agree that an amicable resolution is worth exploring – the Court will entertain a joint request to extend the deadline.  Along the same lines, the Court would be willing to entertain a joint request to move the mandatory-ADR process to the fore.

5

Consistent with the foregoing, Defendants' Motion to Dismiss (**Doc. 81**) is **DENIED**.

IT IS SO ORDERED.


June 30, 2022                                      s/Cathy Bissoon
                                                                    Cathy Bissoon
                                                                    United States District Judge

cc (via ECF email notification):

All Counsel of Record